IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

WESLEY T. BRADY,

      Plaintiff,

v.                                     Civil Action No. 2:14-cv-00265

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 10), Brief in Support of Defendant's Decision (ECF No. 11) and Plaintiff's Reply to Defendant's Brief in Support of Defendant's Decision (ECF No. 12).

### Background

Wesley Todd Brady, Claimant, protectively filed a Title II application for disability and disability insurance benefits (DIB) and a Title XVI application for supplemental security income (SSI) under the Social Security Act on or about March 15, 2011 (Tr. at 143-145, 146-152). Claimant states that he became unable to work because of his disability condition beginning on March 7, 2009 (Tr. at 143, 146). The claims were denied initially on April 26, 2011 (Tr. at 71-75, 76-80) and upon reconsideration on July 7, 2011 (Tr. at 84-86, 87-89). Claimant requested a hearing by an Administrative Law Judge (ALJ) on August 5, 2011, stating that he disagreed with the determination made on his claims because the decision was contrary to the medical evidence and regulations (Tr. at 90-92). Claimant appeared and testified via video teleconference from

Parkersburg, West Virginia before Jack Penca, Administrative Law Judge, who was in Charleston, West Virginia (Tr. at 32-64).  In the Decision dated September 27, 2012, the ALJ determined that based on the application for disability and disability insurance benefits, the Claimant was not disabled under the Social Security Act.  Further, the ALJ determined that based on the application for supplemental security income, the Claimant was not disabled under the Social Security Act (Tr. at 13-31).  On November 21, 2012, Claimant requested a review by the Appeals Council because the decision of the ALJ was contrary to the medical evidence and regulations (Tr. at 12).  On November 12, 2013, the Appeals Council received additional evidence from Claimant which was made part of the record (Tr. at 10-11).  That evidence consisted of Representative's brief dated November 20, 2012, admitted as Exhibit 15E.  On November 12, 2013, the Appeals Council "found no reason under our rules to review the Administrative Law Judge's decision and therefore denied the request for review" (Tr. at 7).  The Appeals Council stated that it considered the Claimant's reasons for disagreeing with the decision and the additional evidence, but found the information did not provide a basis for changing the Administrative Law Judge's decision (Tr. at 7-9).

On January 3, 2014, Claimant brought the present action requesting this Court to review the decision of the defendant and that upon review, remand or modify the decision.

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2014).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  *Id.* §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  *Id.* §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  *Id.* §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  *Id.*  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  *Id.* §§ 404.1520(e), 416.920(e).  By satisfying inquiry four, the claimant establishes a *prima facie* case of disability.  *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f) (2014).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date, March 7, 2009 (Tr. at 18).  Under the second inquiry, the ALJ found that Claimant suffers from the severe

impairments of degenerative disk disease, neuropathy and obesity.  (*Id.*)  At the third inquiry, the ALJ concluded that Claimant does not have an impairment or combination of impairments that meets or equals the level of severity of any listing in Appendix 1.  The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations[1].  As a result, Claimant is unable to perform any past relevant work (Tr. at 24). The ALJ found that Claimant is able to perform occupations such as cashier, a fast food worker and a price marker (Tr. at 25).   On this basis, benefits were denied (Tr. at 25-26).

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In *Blalock v. Richardson*, substantial evidence was defined as:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Cellebreze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

---

[1] The ALJ held that Claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch or crawl, but could never climb ladders, ropes or scaffolds.  He must avoid concentrated exposure to cold, heat, vibration and hazards (Tr. at 19).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

<u>Claimant's Background</u>

On the date of the hearing, Claimant was 40 years old and unmarried.  Claimant testified to receiving Medicaid and food stamps.  Claimant lives with his father.[2]   Claimant testified to standing six feet tall and weighing approximately 483 pounds (Tr. at 37).  Claimant has work experience driving trucks (Tr. at 39).   Claimant has not worked since his alleged onset date of March 7, 2009.  (*Id.*)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that "the ALJ failed to comply with C.F.R. § 404.1527 in assigning 'no weight' to the report of an examining psychologist" (ECF No. 10).   Contrary to Claimant's assertion, the evidence of record does not contain a report by an examining psychologist. Claimant does not allege any mental impairment.  Further, the Psychiatric Review performed as part of the disability determination performed by State agency consultant, Jeff Harlow, Ph.D., dated July 6, 2011, found no medically determinable impairment.  It is assumed that Claimant's assertion and Brief's heading reflecting "examining psychologist" are incorrect and should state "examining physician" as Claimant does not argue a mental impairment or discuss an examining psychologist.

Claimant's Brief in Support of Judgment on the Pleadings states:

> According to the regulations, the ALJ must give the opinion of a treating source controlling weight if he finds the opinion to be "well-supported by medically accepted clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416927(d)(2).   If the opinion of a treating source is not accorded controlling weight, the ALJ must apply certain factors, including the length of the treatment

---

[2]  Claimant testified that his father "has Social Security" (Tr. at 38).

relationship and the frequency of examination, the nature and extent of the relationship, supportability of the opinion, consistency of the opinion with the record as a whole and the specialization of the treating source, in determining what weight to give the opinion.  20 C.F.R. §§ 404.1527(d), 416.927(d). (ECF No. 10).

The Defendant asserts that Claimant's complaints would not preclude him from performing the limited range of light and sedentary work identified at the hearing by the vocational expert (ECF No. 11).  Defendant avers that Claimant has received conservative treatment and obtained good results.  Further, Defendant asserts the ALJ was not required to give controlling weight to the findings of Claimant's treating physician because his findings were not supported by the physician's own record.

<u>Medical Record</u>

On October 7, 2004, Claimant was evaluated by Burt Reed, P.T., with Mountain River Physical Therapy in Mineral Wells, West Virginia (Tr. at 380).  Claimant was referred to physical therapy by neurologist, Houman H. Khosrovi, M.D..  Dr. Khosrovi diagnosed Claimant with degenerative disc disease with complaints of low back pain (Tr. at 390).  Per Dr. Khosrovi's referral, Claimant reported to physical therapy for his low back pain.  Claimant was 32 years old at the time.  Claimant's history stated that he saw a chiropractor once for his back pain but the pain only increased as a result.  (*Id.*)  Claimant saw Mr. Reed on October 11, 2004, October 15, 2004, October 18, 2004, October 22, 2004, October 25, 2004, October 29, 2004, November 1, 2004 and November 5, 2004 (Tr. at 382-383).

An MRI of Claimant's lumbar spine taken in August 2010, by Health Bridge Imaging, LLC, showed a large left posterolateral L5-S1 extrusion displacing the left S1 nerve root with mild stenosis present; and a small central L4-5 disk protrusion with no nerve root contact (Tr. at 323).

Terrence Julien, M.D., a neurosurgeon, examined Claimant in September 2010 for his complaints of back and leg pain (Tr. at 257-260). Claimant stated that he had not tried physical therapy within the last six years, nor tried going to a pain clinic without injections (Tr. at 257). Claimant stated that he tried chiropractic treatment, attending two or three sessions six years earlier.

On physical examination, Claimant's strength was 5/5 in both the upper and lower extremities (Tr. at 260). He had a normal gait and could walk on his heels and toes (Tr. at 260). Straight leg-raising was negative (Tr. at 260). Dr. Julian recommended that Claimant initiate conservative treatment primarily focusing on physical therapy and possibly a pain clinic evaluation for epidural steroid injections (Tr. at 259). Dr. Julian "highly recommend[ed]" that claimant get involved in a structured weight loss program (Tr. at 259).

John Nash, D.O., Claimant's primary care physician, referred him to Gregory V. D'Eramo, M.D., a pain management specialist, on October 14, 2010 (Tr. at 262). Claimant's lumbar spine range of motion and muscle strength were both normal (Tr. at 264). Lower extremity range of motion was normal bilaterally (Tr. at 264). Motor examination was normal in both the upper and lower extremities (Tr. at 264). Claimant's gait and station were normal and he could stand without difficulty (Tr. at 264). Claimant asserted that the pain in his lower back was constant and at a level 3 in severity on a scale of 1 to 10, with 10 being the worst (Tr. at 262). Dr. D'Eramo diagnosed left L4-5 and L5-S1 herniated nucleus pulposus, lumbar spondylosis and lumbar radiculitis, and recommended a series of lumbar transforaminal epidural steroid injections (Tr. at 265). Claimant had three injections between October and December 2010 (Tr. at 266-275). At a follow-up examination in January 2011, Claimant reported that his pain was better (3/10 on a scale of 0 to 10) (Tr. at 276). Claimant's musculoskeletal and

neurologic examinations were both normal (Tr. at 278).  Claimant was reported as "doing well" (Tr. at 278).  Claimant reported that Percocet was effectively treating his pain (Tr. at 262).

Thomas Lauderman, D.O., a state agency physician, reviewed Claimant's claim for benefits on April 26, 2011, and opined that Claimant had the physical residual functional capacity to perform light work with occasional postural maneuvers (except never climbing ladders, ropes or scaffolds); avoidance of concentrated exposure to extreme cold/heat and vibration; and avoidance of all exposure to hazards such as machinery and heights (Tr. at 284-291).  Dr. Lauderman commented that Claimant had a normal gate and was able to stand without difficulty.  Dr. Lauderman found Claimant to be partially credible (Tr. at 291).

Lawrence S. Schaffzin, M.D., also a state agency physician, reviewed Claimant's claim for benefits on June 30, 2011, and affirmed Dr. Lauderman's findings, noting that new evidence provided no indication of a significant increase in the severity of Claimant's impairments (Tr. at 324).[3]

An x-ray of Claimant's left hip taken on July 21, 2011, showed mild degenerative changes and an x-ray of Claimant's right knee taken at the same time showed minor/early osteoarthritis (Tr. at 345).

Claimant returned to Dr. D'Eramo on February 23, 2012, with low back and left leg pain (Tr. at 346).  Claimant reported his pain level to be a 6 on a scale of 1 to 10 with 10 being the worst.  It was noted that Claimant was previously treated with physical therapy and epidural steroid injections, which were effective in relieving Claimant's pain.  Claimant also used a TENS unit and tried water therapy, with good results.  (*Id.*)  On physical examination, range of motion of Claimant's spine was normal, muscle strength was normal, range of motion of Claimant's

---

[3] While Claimant argues that Dr. Schaffzin's credentials are "unknown" (ECF No. 10), the record is clear that Dr. Schaffzin is, in fact, a medical doctor (Tr. at 325).  Dr. Schaffzin specializes in opthamology.  (*Id.*)

upper and lower extremities was normal, motor examination was normal and gait and station were normal (Tr. at 347).   Dr. D'Eramo recommended epidural steroid injections. (*Id.*) Subsequently, Claimant had two steroid injections, in February and March 2012 (Tr. at 348-355).

Again, Claimant returned to Dr. D'Eramo on April 24, 2012, stating that he had good relief from the injections until one and one-half weeks earlier, when he was lifting a lawn mower, but since the incident the pain returned to a tolerable level (Tr. at 366).   Claimant reported that physical therapy was previously effective in relieving pain.   (*Id.*)  Dr. D'Eramo reviewed Claimant's pain log.  Claimant's prior pain score was 2 out of 10 with 10 being the worst.  Subsequently, Claimant reported his pain decreased.  In fact, Claimant reported a 90% decrease in pain.  (*Id.*)

Claimant had a third injection on June 27, 2012 (Tr. at 374).  At a follow-up visit with Dr. D'Eramo's office on August 21, 2012 (approximately one month before the administrative hearing), Claimant discussed having disability papers completed and was told that they typically do not deem a patient disabled without first doing a functional capacity evaluation (Tr. at 376-378).

Dr. Nash, the Claimant's primary care physician, completed a lumbar spine residual functional capacity questionnaire on Claimant's behalf on September 4, 2012, opining that Claimant would miss more than 4 work days per month due to his impairments and treatments (Tr. at 466-469).

<u>Standard of Review</u>

The role of this Court, on judicial review, is to determine whether the Commissioner's final decision is supported by substantial evidence.  42 § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "more than a mere scintilla of evidence but

may be somewhat less than a preponderance." *Id.* In applying the substantial evidence standard, the Court should not "reweigh conflicting evidence, making credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F. 3d 585, 589 (4th Cir. 1996)). "When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner]." *Id.*

## Discussion

Claimant testified to quitting his job as a truck driver because he "couldn't stand the bouncing around in the truck and climbing in and out of the truck" (Tr. at 42). He stated that Dr. Nash has been his primary care physician for somewhere between five to seven years (Tr. at 43). He testified to seeing Dr. Nash every three to six months. (*Id.*) Claimant testified to suffering side effects from medications including sleepiness, drowsiness and occasional blurred vision. Claimant testified to taking prescribed pain medication (Tr. at 44). He stated that an MRI had revealed he has a large left disc extrusion that is displacing his nerve root in his lower back (Tr. at 45). Claimant also reported to receiving pain injections and taking physical therapy for his back. (*Id.*) Claimant testified to relief from the pain injections (Tr. at 46). Claimant testified that he is not a candidate for surgery on his spine due to his weight. (*Id.*) Claimant testified to feeling most comfortable when lying down (Tr. at 48).

## Weight Afforded Examining Physician Opinion

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (2013). Thus, a treating physician's opinion is afforded

10

"controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." *Ward v. Chater*, 924 F. Supp. 53, 55 (W.D. Va. 1996); *see also*, 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (2005). Under §§ 404.1527(d)(2) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527 and 416.927 add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d) and 416.927(d)(1), more weight generally is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). The Fourth Circuit Court of Appeals has held that "a non-examining physician's opinion cannot by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted by all of the other evidence in the record." *Martin v. Secretary of Health, Education and Welfare*, 492 F.2d 905, 908 (4th Cir. 1974); *Hayes v. Gardener*, 376 F.2d 517, 520-21 (4th Cir. 1967). Thus, the opinion "of a non-examining physician can be relied upon when it is consistent with the record." *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).

The ALJ is not required in all cases to give the treating physician's opinion greater weight than other evidence in determining whether a claimant is disabled under the Act. *Johnson v. Barnhart*, 434 F.3d 650, n. 5 (4th Cir. 2005).  The ALJ retains the duty to analyze treating source opinions and judge whether they are well-supported by medically acceptable evidence and consistent with other substantial evidence in the record.  20 C.F.R. §§ 404.1527(c)(2) and 416.927.  If a medical opinion is not supported by relevant evidence or it is inconsistent with the record as a whole, it will be accorded significantly less weight.  *See* 20 C.F.R. §§ 404.1527 and 416.927; *Craig*, 76 F.3d at 590 ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.").

Moreover, a treating physician's opinion can never bind the ALJ on issues reserved to the ALJ, such as a claimant's RFC or whether a claimant is able to work.  These decisions are solely the responsibility of the ALJ because they are administrative findings that are dispositive of a case; they are not medical issues.  *See* 20 C.F.R. §§ 404.1527(d)(1)-(3) and 416.927(d)(1)-(3); Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2 (S.S.A.).

Claimant asserts the following:

The ALJ was required to evaluate the opinion of Dr. Nash by applying the regulatory factors of 20 C.F.R. § 404.1527(b).  Instead, the ALJ gave two reasons for his rejection of Dr. Nash's opinion, neither of which is sound: (1) the lack of objective evidence after 2010, and (2) the internal inconsistency of Dr. Nash's opinion (Tr. at 23-24).  With regards to the ALJ's first reason, the ALJ failed to consider the fact that an updated MRI was requested but denied by Claimant's insurance in September 2011 (Tr. at 343).  Moreover, treatment notes from Dr. Nash and PARS Pain Center document Claimant's regular and ongoing need for treatment with epidural injections through 2012 (Tr. at 341-345, 346-355, 356-375).  As for the ALJ's second reason, Dr. Nash's treatment notes consistently reported that Claimant experienced bilateral leg numbness and tingling with extended sitting or standing, shooting pains with walking and the need to change positions often or even to lie down (*Id.*; *see also* Tr. at 256-261, 262-278, 293-323).  Therefore, due to the symptoms caused by Claimant's impairments, Dr.

12

Nash's opinion that Claimant would require a sit/stand option with the ability to walk and change positions is supported by longitudinal record. (ECF No. 10).

L.R. Auvil, M.D., performed physical evaluations on Claimant in September 2010 and October 2011. Dr. Auvil noted normal gait and posture, with only some adema in the lower extremities and hyper reflex. Contrary to his own findings, Dr. Auvil found that Claimant's degenerative disk disease and morbid obesity would cause him to be unable to perform any full-time work. The ALJ gave little weight to Dr. Auvil's opinion as it was inconsistent with his own findings and notes.

The ALJ also gave the findings of Elbert J. Nash, M.D., little weight (Tr. at 22). The ALJ held that "While Dr. Nash noted seeing the claimant as needed from October 2008 to September 2012, the objective medical records fail to support Dr. Nash's opinions regarding claimant's limitations." (*Id.*) Dr. Nash's records reported Claimant was "feeling good" or "better" by September 2009, and indicated relief with medications in March 2011.

The ALJ gave great weight to the findings and opinions of Dr. Lauderman. Dr. Lauderman's findings were affirmed by Dr. Schaffzin. The ALJ held that Dr. Lauderman's assessment provides reasonable restrictions and is supported by the medical evidence of record (Tr. at 24).

Substantial evidence supports the ALJ's findings and weight given treating, examining and non-examining physicians in the record.

<u>Credibility Determination</u>

The ALJ must accompany his decision with sufficient explanation to allow a reviewing court to determine whether the Commissioner's decision is supported by substantial evidence. "[T]he [Commissioner] is required by both the Social Security Act, 42 U.S.C. § 405(b), and the Administrative Procedure Act, 5 U.S.C. § 557(c), to include in the text of [his] decision a

statement of the reasons for that decision." *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir.

1986). The ALJ's "decisions should refer specifically to the evidence informing the ALJ's

conclusion. This duty of explanation is always an important aspect of the administrative

charge...." *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

Substantial evidence supports the ALJ's finding that Claimant's alleged severity of

symptoms was not credible. The ALJ held Claimant's statements concerning the degree of

limitations implies an attempt to present himself as more limited than he is in order to secure

benefits (Tr. at 20). The ALJ held:

> The claimant reports a longitudinal history of back pain, in which he described his
> pain as "constant" and characterized it as a three out of a possible ten on the pain
> scale. He noted no alleviating factors, but also reported Percocet had been
> effective and suggested physical therapy had provided some temporary relief.
> Physical therapy records from November 2004 indicate the claimant had been
> seen by Burt Reed, PT, for complaints of low back pain and left lower extremity
> pain. Treatment consisted of manual therapy and therapeutic exercises. The
> claimant reported treatment gave lower extremity pain relief for approximately
> two weeks and low back pain relief for one week. Mr. Reed's records reveal the
> claimant continued to work through therapy, noting his employer had provided
> modification of job activities and requirements in order to minimize symptoms.
> The claimant did not continue with treatment, but instead was discharged with
> home exercises. (Tr. at 20).

In discussing Claimant's reported symptoms and limitations, the ALJ held that

Claimant's record is inconsistent and unpersuasive (Tr. at 23). The ALJ found Claimant's

description of symptoms as vague and general, lacking the specificity which might otherwise

make it more convincing. (*Id.*) The ALJ stated "The claimant has not provided convincing

details regarding factors which precipitate the allegedly disabling symptoms, claiming that the

symptoms are present constantly. His reports of pain have been so severe as to seem

implausible."

In discussing Claimant's residual functional capacity, the ALJ continues to point out inconsistencies.  The ALJ held that Claimant's "allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty." (*Id.*)  "[E]ven if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors."  The ALJ found that Claimant's reported limited daily activities are outweighed by the other factors, including his self-reported independence in all activities of daily living.

The ALJ considered Claimant's work history in assessing his credibility.  The ALJ found "While the claimant has a somewhat steady history of employment, his earnings record reflects a significant drop in wages between 2006 and 2007, years before his alleged onset date.  This drop in earnings raises questions as to whether or not claimant's current unemployment is truly the result of a medical condition or other reasons" (Tr. at 23).

The ALJ continued to point out inconsistencies in Claimant's allegations by reflecting that in April 2012, when Claimant saw C.P. Mayo, FNP, CC, he reported that his pain was better and characterized it as a 4 out of 10, with 10 being the worst.  The ALJ held "He suggested his pain had increased when lifting a lawn mower, but was now better" (Tr. at 22).   The ALJ ultimately held that "Overall, the claimant has not had the type of treatment one would expect of a totally disabled individual.  While the claimant has been conservatively treated with injection and physical therapies, there is no indication of an intensification of treatment.  Rather, the record suggests that conservative treatment has been relatively good in controlling the claimant's symptoms" (Tr. at 22-23).

15

Substantial evidence supports the ALJ's finding that Claimant's alleged severity of symptoms was not credible. The ALJ held Claimant's statements concerning the intensity, persistence and limiting effects of his symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment. The ALJ concluded that the objecting findings do not support the limitations alleged by Claimant and reveal he is only partially credible regarding the severity of his complaints.

As the fact-finder, the ALJ has the exclusive responsibility for making credibility determinations. *See*, *Shively v. Heckler*, 739 F.2d 987, 989-990 (4th Cir. 1984) (stating that "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight").

<u>Obesity</u>

"[W]hen determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00Q (2013); *see also* SSR 02-1p, 2000 WL 628049, at *1 (Sept. 12, 2002) (Obesity must be considered when evaluating impairments under the listings and when assessing a claim at other steps of the sequential evaluation process.).

The court proposes that the presiding District Judge find that the ALJ properly considered Claimant's obesity, and his findings are supported by substantial evidence. In his decision, the ALJ found that Claimant did not attempt to lose weight regardless of physicians' recommendations (Tr. at 22). Furthermore, the ALJ found that Claimant failed to comply with physician recommendations.

16

Although obesity is no longer a listed impairment, Social Security Ruling 02-1p requires ALJs to consider obesity in determining whether claimants have medically determinable impairments that are severe, whether those impairments meet or equal any listing and finally, in determining the residual functional capacity.   Additionally, obesity may limit an individual's ability to sustain activity on a regular and continuing basis during an eight-hour day, five-day week or equivalent schedule.   The ALJ stated that all these considerations have been taking in account in reaching the conclusions within his decision (Tr. at 19).

Claimant testified to seeking lap band surgery for weight reduction (Tr. at 41-42). Claimant testified that on the day of his surgery his bloodwork indicated hemolytic anemia resulting in the procedure being postponed.   He testified that by the time his bloodwork was compliant for surgery, he had lost his health insurance and could not afford the surgery (Tr. at 42).

The ALJ held:

Morbid obesity is a documented medical condition noted to exacerbate the claimant's pain and symptoms.  This obesity is characterized by a weight as high as 495 pounds and a body mass index of over 63.[4]   Yet, despite the claimant's physicians' ongoing recommendations to lose weight, the record documents no significant attempts to do so.  While the claimant reports no insurance coverage for lap band surgery nor other complications interfering with the completion of such surgery, there is nothing in the record evidencing any use of diet or exercise programs.   The claimant clearly failed to comply with physician recommendations. 20 C.F.R. 416.930 directs that in order for a claimant to receive benefits he must follow treatment prescribed by his physician if the treatment can restore the ability to work.  Further, the regulation provides that if you do not follow the prescribed treatment without a good reason, the claimant cannot be found disabled. (Tr. at 22).

---

[4]  Body mass index (BMI) is the ration of an individual's weight in kilograms to the square of his or her height in meters (kg/m2).

Vocational Expert

The ALJ asked Claimant about his work experience from 1990 to 1999 as a warehouse manager for a commercial building supply company (Tr. at 56).  Claimant testified to supervising employees and creating a schedule for truck deliveries (Tr. at 56-57).  The vocational expert (VE) provided testimony to characterizing Claimant's prior work experience driving a truck to be semi-skilled to medium skill level (Tr. at 55).  The ALJ asked the VE to assume an individual of Claimant's age, education and work history who can perform work at the light exertional level; who can occasionally climb ramps and stairs, never ladders, ropes or scaffolds; who can occasionally balance, stoop, kneel, crouch and crawl; who must avoid concentrated exposure to extreme cold, extreme heat and vibrations; and who must avoid all exposure to hazard such as moving machinery and unprotected heights (Tr. at 58).  Then ALJ then asked the VE if such an individual could perform Claimant's prior work.  The VE testified that the individual could not.  (*Id.*)  The VE testified that at a light exertional level, the individual could perform positions such as a cashier, fast food worker and price marker (Tr. at 58-59).

The ALJ asked the VE to consider the same hypothetical individual but limited to sedentary work (Tr. at 59).  The VE testified that the individual could perform positions as security-related activity, surveillance system monitor, document preparation positions and escort vehicle driver positions.  (*Id*.)  The ALJ asked the VE to consider this same hypothetical person working at a sedentary level to be able to sit, stand and walk, each for less than two hours in an eight-hour workday.  The ALJ asked the VE if any jobs existed for a person with those limitations.  The VE replied that there were no jobs for a person limited to that degree (Tr. at 60).

The ALJ then asked the VE to consider his first hypothetical involving light level exertion, include a sit and stand at will option and state if any jobs existed for that person.  The

18

VE testified "Well, certainly it would limit a person from a full range of light positions.  If we look at, for example, light cashier positions, it would be limited to about 10 percent of the total jobs there, limited to people who may work in toll booths or at – you know, that kind of thing.  It would eliminate the fast food work altogether.  The price marking positions also would be eliminated, reduced to about 10 percent of those as well. There are some of those jobs that allow some flexibility, but it would significantly reduce the job number" (Tr. at 60-61).

The VE testified that in terms of light work, she would look at security guard type work (Tr. at 61).  She suggested looking at jobs such as a night watchman/guard or gate guard.  (*Id.*)  Upon examination by Claimant's attorney, the VE testified that adding the limitation of needing to walk around every 15 to 20 minutes would result in lack of productivity.  The VE testified that it would be difficult for the individual "to get enough work done or be attentive enough [for] work activity to be successful in the workplace" (Tr. at 62).  Claimant's counsel asked the VE if a person needed frequent unscheduled breaks to try and alleviate pain through the day, if the ALJ's hypothetical individual would be able to perform the same work.  The VE testified that it would depend on how many breaks and how much the breaks interrupted work activity (Tr. at 62-63).  The VE testified that "There are no hard-and-fast rules" regarding tolerance for frequent and unscheduled work breaks (Tr. at 63).  When Claimant's counsel asked the VE if a person misses four days a month, how would that impact the individual's ability to maintain substantial gainful activity, the VE testified to not knowing of any employer that would tolerate that degree of absenteeism.  (*Id.*)

Conclusion

The Social Security Act defines disability as the inability to do any substantial gainful activity by reason of any medically determinable impairment, "which can be expected to result in

19

death, or which has lasted or can be expected to last, for a continuation period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To be found disabled, an individual must have a severe impairment that precludes her from performing not only her previous work, but also any other substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).  The claimant bears the ultimate burden of proving disability within the meaning of the Act.  *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(a).

Here, substantial evidence supports the ALJ's holding that that although Claimant suffers from severe back issues and morbid obesity that are significantly limiting, those limitations do not preclude all work (Tr. at 23).  The ALJ gave Claimant the benefit of the doubt and presented a more limiting hypothetical to the VE, to which the VE testified that significant jobs existed both in the regional and national economies.  The ALJ found "though I find the claimant's complaints regarding his impairments somewhat credible, the evidence in its entirety does not suggest any impairment or combination of impairments that would prohibit all work" (Tr. at 23).

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner, DENY Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 10), and DISMISS this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable John T. Copenhaver, Jr.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections,

identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date:   February 18, 2015

Dwane L. Tinsley
United States Magistrate Judge